IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Ex Rel. MOUNTHASONE BOTT and SUSAN NEWMAN,<br>    Plaintiffs,<br>  v.<br>SILICON VALLEY COLLEGES, et al.,<br>    Defendants.<br>_____/ | No. C 04-320 CW<br><br>ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS |

Defendants U.S. Education Corporation (USEC), Silicon Valley Colleges, Western Career Colleges, Greg Nathanson, Ellis C. Gedney, Darryl Lindsey, Barbara Bickett, George Montgomery and Leslie E. Pritchard (collectively, USEC Defendants) move pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) to dismiss the first amended complaint (FAC) of Relators Mounthasone Bott and Susan Newman (collectively, Relators). Defendants Weworski & Associates (Weworski) and Almich & Associates (Almich) each separately move to dismiss the FAC on the same grounds. Relators oppose the motions. The matter was heard on July 1, 2005. Having considered all of the papers filed by the parties and oral argument on the motion, the Court grants the motions to dismiss.

BACKGROUND

Relators bring this qui tam action under the False Claims

Act (FCA), 31 U.S.C. § 3729 et seq, against all Defendants on behalf of the United States to recover all federal educational grants, including Pell Grants, and all payments on federally insured educational loans used to fund students at SVC and WCC.

According to the FAC, SVC and WCC (hereinafter referred to collectively as the Colleges) are California corporations and "'proprietary institution[s] of higher education'" with multiple campuses in the San Francisco Bay Area region. FAC ¶ 24. They are subsidiaries of USEC, also a California corporation. Individual USEC Defendants Nathanson, Gedney, Lindsey, Bickett, Montgomery and Pritchard are executives, owners or administrators of USEC or its subsidiaries. Weworski is a certified public accountancy (CPA) firm in San Diego, California, that has conducted compliance examinations and financial audits for the Colleges. Almich is a CPA firm in Irvine, California, that has also conducted compliance examinations and financial audits for the Colleges.

Relators Bott and Newman were formerly employed as admissions representatives at the San Jose campus of SVC in 2003.

Relators allege that the Colleges falsely certified that they were in compliance with applicable federal law prohibiting incentive payments to admissions representatives. In order to be eligible to participate in the grant and loan programs authorized by Title IV of the Higher Education Act (HEA), 20 U.S.C. § 1070 et seq., an institution must enter into a Program Participation Agreement (PPA) with the Secretary of Education.

2

20 U.S.C. § 1094(a). The PPA conditions the Colleges' eligibility upon compliance with certain requirements, <u>inter alia</u>,

> The institution will not provide any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments or financial aid to any persons or entities engaged in any student recruiting or admission activities or in making decisions regarding the award of student financial assistance . . . .

<u>Id.</u> § 1094(a)(20). The Department of Education (ED) has promulgated "safe harbor" regulations, which clarify that institutions may provide their admissions representatives with

> fixed compensation, such as a fixed annual salary or a fixed hourly wage, as long as that compensation is not adjusted up or down more than twice during any twelve month period, and any adjustment is not based solely on the number of students recruited, admitted, enrolled, or awarded financial aid. For this purpose, an increase in fixed compensation resulting from a cost of living increase that is paid to all or substantially all full-time employees is not considered an adjustment.

34 C.F.R. § 668.14(b)(22)(ii)(A). Nothing in the statute or the regulations addresses the conditions under which an institution may terminate its admissions representatives.

In addition to the PPA, HEA requires that participating institutions submit to the ED the results of annual audits. 20 U.S.C. § 1094(c)(1)(A)(i). These audits must be conducted by a qualified, independent organization "in accordance with standards established by the American Institute of Certified Public Accountants." 20 U.S.C. § 1099c(c)(5).

Relators allege that the Colleges pay their admissions representatives based on an incentive salary structure, in violation of the HEA, 20 U.S.C. § 1094(a)(20). Specifically,

3

according to the FAC, a "so-called 'salary' was paid to Relators, and to all other recruiters employed at the Colleges' campuses, that was directly tied to an enrollment quota for that recruiter." FAC ¶ 47. Pursuant to this arrangement, recruiters who failed to enroll their minimum quota were terminated, while those who exceeded the minimum quota were retained and given raises. In addition, admissions representatives who failed to "convert" a minimum percentage of leads into enrollments were also terminated.

Relators identify two potential categories of resulting false certifications or false statements by USEC Defendants. First is the PPA, in which the Colleges agree to comply with all the requirements of 20 U.S.C. § 1094(a), including the ban on incentive compensation, in order to become eligible for participation in HEA programs. Second, Relators allege that the Colleges' management made false statements of compliance with the HEA to its auditors, which statements were then transmitted to the federal government as part of the annual audit. FAC ¶ 57-58.

Relators' claims against Weworski and Almich, referred to in the Complaint collectively as "Accountants," arise out of accounting services provided to the Colleges in connection with the annual audit requirements. Weworski and Almich allegedly falsely certified to the ED that they had audited financial statements in accordance with Generally Accepted Accounting Standards, that those financial statements were fairly presented in accordance with Generally Accepted Accounting Principles, and

4

that the Colleges were in compliance with eligibility requirements. Id. ¶ 51-52. In addition, the Accountants allegedly "deliberately concealed and excluded from their compliance reports that [the Colleges'] recruiter compensation practices violated federal statutes." Id. ¶ 91. Relying on "doubtful explanations of management" about the compensation policy, Weworski and Almich allegedly failed to expand the scope of its audit, to evaluate critically the Colleges' high enrollment figures and high turnover of admissions employees, or to seek an outside opinion regarding the legality of the Colleges' compensation practices, instead "interpret[ing] the law according to the companies' desires." Id. ¶¶ 105-109.

On May 26, 2004, the United States filed a Notice of Election declining to intervene in this case. However, the government has filed a document stating its position regarding some of the legal issues raised in the motions to dismiss.

## LEGAL STANDARD

I. Motion for Dismissal under Rule 12(b)(6)

A motion to dismiss for failure to state a claim will be denied unless it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Falkowski v. Imation Corp., 309 F.3d 1123, 1132 (9th Cir. 2002), citing Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "Each averment of a pleading shall be simple, concise, and direct. No technical forms of

5

pleading or motions are required." Fed. R. Civ. P. 8(e). These rules "do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957).

When granting a motion to dismiss, a court is generally required to grant a plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, a court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990). Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged pleading. Id. at 296-97.

II. Special Pleading Standards

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d

727, 731 (9th Cir. 1985). Statements of the time, place and nature of the alleged fraudulent activities are sufficient, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1439 (9th Cir. 1987), provided the plaintiff sets forth "what is false or misleading about a statement, and why it is false." In re GlenFed, Inc., Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994). Scienter may be averred generally, simply by saying that it existed. See id. at 1547; see Fed. R. Civ. P. 9(b)("Malice, intent, knowledge, and other condition of mind of a person may be averred generally"). As to matters peculiarly within the opposing party's knowledge, pleadings based on information and belief may satisfy Rule 9(b) if they also state the facts on which the belief is founded. Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1439 (9th Cir. 1987).

## JUDICIAL NOTICE

USEC Defendants and Almich request that the Court take judicial notice of several unpublished district court cases dismissing similar claims against other for-profit institutions of higher education. USEC Defendants' Request for Judicial Notice, Ex. A, United States ex rel. Hendow v. University of Phoenix, No. S-03-457 GEB DAD (E.D. Cal. May 20, 2004), appeal docketed, No. 04-16247 (9th Cir. June 21, 2004), and Ex. B., United States ex rel. Bowman v. Education America, Inc., No. H-00-3028 (S.D. Tex. Jan. 8, 2004); Almich's Request for Judicial Notice, Ex. A. (Hendow), Ex. B (Bowman) and Ex. C (America ex rel. Main v. Oakland City University, No. 3:03-CV-71 RLY-WGH (S.D. Ind. March 15, 2005). Relators do not object to judicial

notice of Hendow, and ask the Court to take judicial notice of amicus briefs filed by the Solicitor General on the appeal of Hendow and on another pending case involving "reverse false claims," United States ex rel. Bahrani v. Conagra, Inc., No. 04-1407 (10th Cir. 2004). However, Relators object to USEC Defendants' request for notice of Bowman on the grounds that it is unpublished, and seek a hearing on this issue.

Plaintiffs request that the Court take judicial notice of Senate Report No. 102-58, Abuses in Federal Student Aid Programs (1991).

Weworski and Almich request that the Court take judicial notice of the Audit Guide for Audits of Student Financial Assistance Programs at Participating Institutions and Institution Services (January 2000) written by the ED Office of the Inspector General, available online at http://ifap.ed.gov/aguides/attachments/sfgd2000.pdf. Relators do not object to this request.

Under Rule 201 of the Federal Rules of Evidence, a court may take judicial notice of facts that are not subject to reasonable dispute because they are either generally known or capable of accurate and ready determination. The Court takes judicial notice of Hendow. However, the Court denies all other requests for judicial notice as moot because they are unnecessary to resolve the motions. Relators' objection is likewise overruled as moot.

DISCUSSION

I. Dismissal under Rule 12(b)(6)

Relators' complaint alleges three counts of violation of the FCA. All Defendants contend that the complaint must be dismissed for failure to state a claim under Rule 12(b)(6) because inter alia USEC Defendants' acts, as alleged, fall within the safe harbor provisions of the ED's regulations.

Defendants argue that a system of recruitment quotas, in which those employees who fail to meet the minimum requirements are fired and those who exceed the minimum are retained and given raises, is conduct expressly permitted by an applicable ED regulation, 34 C.F.R. § 668.14(b)(22)(ii)(A). The ED's purpose in allowing semi-annual pay raises for admissions representatives was to describe payment arrangements that an institution could carry out "that have been determined not to violate the incentive compensation prohibition." Dep't of Ed., Federal Student Aid Programs, 67 Fed. Reg. 67,048, 67,053 (Nov. 1, 2002). Although pay adjustments may not be based "solely" on the number of students recruited, the ED promulgated the safe harbor provision based on its understanding that the "HEA did not imply that institutions could not base salaries or salary increases on merit." Id. at 67,053. Furthermore, as Defendants note, nothing in the HEA or in the ED's regulations otherwise regulates the hiring and firing of admissions representatives or an institution's ability to set mandatory recruitment quotas. See Original Honey Baked Ham Co. v. Glickman, 172 F.3d 885, 887 (D.C. Cir. 1999) ("A statute listing the things it does cover exempts, by omission, the things it does not list.").

9

Relators characterize those regulations as an unconstitutional modification of the statute, by which the ED exceeded the authority granted it by Congress and circumvented the failure of a legislative effort to loosen the HEA language. Relators' Opp. to USEC Defs.' Mot. Dismiss at 20-23. According to Relators, the ED safe harbor provisions have "effectively legalized the conduct directly prohibited in the Higher Education Act." Relators' Opp. to Almich's Mot. Dismiss at 10.

Relators' focus on the unconstitutionality of the safe harbor regulations undermines the basis for their FCA claims. First, Relators' allegation that the Colleges' system of firing or promoting their admissions representatives violated federal laws is the only basis for Relators' contention that Defendants submitted "false or fraudulent" claims or statements to the government. Submission of false or fraudulent claims is an essential element of an FCA action. 31 U.S.C. § 3729(a)(1-3). The purpose of the safe harbor provision was to specify arrangements that did not violate the statute, and therefore Defendants were entitled to represent that they had complied with the law if their practices were protected by the regulations. See Lucky v. Baxter Healthcare Corp., 183 F.3d 730, 732 (7th Cir. 1999) (noting that if an FCA defendant "complies with the existing regulations, it is entitled to represent to the government (and the world) that it has done so, without facing a claim of deception"). In fact, Relators have not alleged any conduct that falls outside the safe harbor

10

regulations. For example, they have not alleged that the Colleges provide more than two salary adjustments in a year not related to cost-of-living, or adjustments based "solely on the number of students" recruited.

Furthermore, assuming arguendo that the safe harbor provision is unconstitutional and Defendants' acts did not comply with the HEA, Relators still cannot show that Defendants "knowingly" submitted false or fraudulent claims, another essential element. See 31 U.S.C. § 3729(a)(1-2). Neither the USEC Defendants nor their accountants can be said to have possessed the requisite scienter, which is "'the knowing presentation of what is known to be false,'" if they were complying with ED regulations. United States ex rel. Hochman v. Nackman, 145 F.3d 1069, 1073 (9th Cir. 1998) (quoting United States ex rel. Hagood v. Sonoma County Water Agency, 929 F.2d 1416, 1421 (9th Cir. 1991)). In Hochman, the court found that FCA defendants lacked the requisite scienter where they relied on agency guidelines, despite the fact that those guidelines were potentially inconsistent with other requirements. Here, the ED promulgated regulations precisely in order to clarify the governing law, and Defendants' reliance on those regulations precludes their FCA liability.

For these reasons, the Court grants Defendants' motions to dismiss for failure to state a claim under the FCA. Relators are granted leave to file a second amended complaint that addresses these deficiencies.

II. Failure to Meet Pleading Requirements

As in any cause of action sounding in fraud, the allegations of a FCA claim must be plead with particularity. Bly-Magee v. California, 236 F.3d 1014, 1018 (9th Cir. 2001). As such, they must be "'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" Id. at 1019 (quoting Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993)). However, "Rule 9(b) may not require [the plaintiff] to allege, in detail, all facts supporting each and every instance of [a FCA claim] over a multi-year period." United States ex rel. Lee v. Smithkline Beecham, Inc., 245 F.3d 1048, 1051 (9th Cir. 2001).

While Relators have attempted to plead the elements of an FCA claim with respect to the Colleges and USEC (which allegedly "controls and directs" the Colleges' activities), the complaint contains no details regarding the liability of any of the individual USEC Defendants. Without any specific allegations against them, the individual Defendants cannot know how they are alleged to have participated in the Colleges' conduct, and how to respond to the complaint. If Relators choose to name individual Defendants in their SAC, they must meet the requirements of Rule 9(b) with respect to each.

Similarly, Relators' allegations against "Accountants" fail to specify which particular allegedly false or fraudulent claims or statements were done when and by whom. If Relators choose to name the accountant Defendants in their SAC, they must meet the

12

requirements of Rule 9(b) and do so with respect to each firm separately.

## CONCLUSION

For the foregoing reasons, USEC Defendants, Weworski and Almich's motions to dismiss Relators' complaint are GRANTED (Docket Nos. 24, 41 and 58, respectively).

Relators may file a SAC in accordance with the instructions above if they can do so truthfully and without contradicting the FAC. As the Court ruled at the hearing, Relators must file any SAC within three weeks from the hearing date; any answer will be due three weeks later. Motions to dismiss must be noticed for September 16, 2005, at 10:00 a.m., at which time the Court will also hold a case management conference.

USEC Defendants' request for judicial notice (Docket No. 26) is GRANTED in part and otherwise DENIED as moot. Relators' first request for judicial notice (Docket No. 37) is GRANTED, but their second request for judicial notice is DENIED as moot (Docket No. 75). Weworski and Almich's requests for judicial notice are DENIED as moot (Docket Nos. 43, 60 and 78).

IT IS SO ORDERED.

/s/ CLAUDIA WILKEN

Dated: 7/13/05

CLAUDIA WILKEN
United States District Judge