United States District Court

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, Ex Rel. MOUNTHASONE BOTT and SUSAN NEWMAN, | No. C 04-320 CW |
| Plaintiffs, | ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS |
| v. | |
| SILICON VALLEY COLLEGES, et al., | |
| Defendants. | |
| _____/ | |

Defendants U.S. Education Corporation (USEC), Silicon Valley Colleges and Western Career Colleges (the Colleges), and Greg Nathanson, Ellis C. Gedney and Darryl Lindsey (collectively, USEC Defendants) move pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) to dismiss the second amended complaint (SAC) of Relators Mounthasone Bott and Susan Newman (collectively, Relators).  Defendant Almich & Associates (Almich) separately moves to dismiss the SAC on the same grounds.  Relators oppose the motions.  The matters were heard on September 16, 2005.

Having considered all of the papers filed by the parties and oral argument on the motions, the Court grants the motions to dismiss.

BACKGROUND

Relators bring this qui tam action under the False Claims Act (FCA), 31 U.S.C. § 3729 et seq, against all Defendants on behalf of

the United States to recover all federal educational grants, including Pell Grants, and all payments on federally insured educational loans used to fund students at the Colleges.  The parties and claims are described in the Court's July 13, 2005 Order Granting Defendants' Motions to Dismiss.

As explained in that order, the Colleges must enter into a Program Participation Agreement (PPA) with the Secretary of Education in order to be eligible to participate in grant and loan programs authorized by Title IV of the Higher Education Act (HEA), 20 U.S.C. § 1070 et seq. 20 U.S.C. § 1094(a).  The PPA conditions the Colleges' eligibility upon compliance with certain requirements, among others,

> The institution will not provide any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments or financial aid to any persons or entities engaged in any student recruiting or admission activities or in making decisions regarding the award of student financial assistance . . . .

Id. § 1094(a)(20).  The Department of Education (ED) has promulgated "safe harbor" regulations, which clarify that institutions may provide their admissions representatives with

> fixed compensation, such as a fixed annual salary or a fixed hourly wage, as long as that compensation is not adjusted up or down more than twice during any twelve month period, and any adjustment is not based solely on the number of students recruited, admitted, enrolled, or awarded financial aid.  For this purpose, an increase in fixed compensation resulting from a cost of living increase that is paid to all or substantially all full-time employees is not considered an adjustment.

34 C.F.R. § 668.14(b)(22)(ii)(A).  Nothing in the statute or the regulations addresses the conditions under which an institution may terminate its admissions representatives.  In addition to the PPA, HEA requires that participating institutions submit to the ED the

1   results of annual audits.  20 U.S.C. § 1094(c)(1)(A)(i).

2       In both the first amended complaint (FAC) and the SAC,

3   Relators allege that Defendants falsely certified that the Colleges

4   were in compliance with applicable federal law prohibiting

5   incentive payments to admissions representatives.  In the FAC,

6   Relators alleged that they and other recruiters were paid a "so-

7   called 'salary' . . . that was directly tied to an enrollment quota

8   for that recruiter."  FAC ¶ 47.  Pursuant to this arrangement,

9   recruiters who failed to enroll their minimum quota were

10  terminated, while those who exceeded the minimum quota were

11  retained and given raises.  In addition, admissions representatives

12  who failed to "convert" a minimum percentage of leads into

13  enrollments were also terminated.  Relators also alleged in the FAC

14  that Almich and another accounting firm, Weworski & Associates,[1]

15  falsely certified in connection with annual audits that the

16  Colleges were in compliance with federal eligibility requirements.

17      In its July 13, 2005 order, the Court dismissed the FAC

18  pursuant to Rule 12(b)(6) for failure to state a claim and for

19  failure to comply with Rule 9(b)'s requirement that the FCA

20  allegations of fraud be plead with particularity.

21      The Court found that the FAC failed to state an FCA claim

22  because the USEC Defendants' alleged system of recruitment quotas,

23  in which employees who fail to meet the minimum enrollment quotas

24  are fired and those who exceed the minimum are retained and given

25  raises, fell within the safe harbor provisions of the ED's

26  —————————————

27      [1]The SAC does not name Weworski & Associates as a defendant.

28                              3

1   regulations.  The Court reasoned that, although pay adjustments

2   could not be based "solely" on the number of students recruited,

3   the safe harbor provision reflected the ED's understanding that

4   institutions could base salaries or salary increases on merit.  The

5   Court found that the regulations did not otherwise address the

6   hiring and firing of admissions representatives or an institution's

7   ability to set mandatory recruitment quotas.  The Court found that,

8   in fact,

> Relators have not alleged any conduct that falls outside the
> safe harbor regulations.  For example, they have not alleged
> that the Colleges provide more than two salary adjustments in
> a year not related to cost-of-living, or adjustments based
> "solely on the number of students" recruited.

12  July 13 Order at 10.  Because the practices alleged were protected

13  by the regulations, the Court concluded that Defendants could not

14  be held liable for fraud under the FCA, even if the ED regulations

15  were inconsistent with the HEA.

16      In the SAC, Relators allege generally and repeatedly that the

17  Colleges "were paying commissions and other incentive compensation

18  to recruiters based solely on their success at securing

19  enrollments."  SAC ¶ 13; see also id. ¶ 17 ("recruiters at SVC were

20  paid substantial raises based solely on their success at securing

21  enrollments"), ¶ 19 ("All Sales Representatives at [SVC] were paid

22  solely based on the number of students they enrolled. . . .  The

23  salary of each sales representative was based solely on their

24  enrollments."), ¶ 20 ("the enrollment quotas are assigned to the

25  individual Sales Persons on the basis of the salaries they

26  receive"), ¶ 21 (alleging that Mr. Nathanson informed Ms. Bott that

27  "recruiters were rewarded according to success at securing

28

4

enrollments") and ¶ 27 (recruiters "were promised they would receive raises based solely on their success in securing enrollments beyond their minimum enrollment quotas . . . All recruiters who failed to meet their minimum enrollment quotas were terminated").

More specifically, Ms. Bott alleges that she had a minimum enrollment quota of approximately twelve students per month, and that she was fired after three months "solely because she failed to meet her enrollment quota." Id. ¶ 18. Relators allege that sales representative Indy De Croos was paid a starting salary of $40,000, and "received a $10,000 raise after his third month of employment solely based on the number of students he recruited. Indy received a second $10,000 raise later in the year based solely on his continued success as [sic] securing enrollments for the company." Id. ¶ 19. Relators also allege that other sales representatives were paid salaries varying between $50,000 and $90,000, but do not allege any additional details suggesting a specific relationship between those salaries and the number of students enrolled. Similarly, Ms. Newman alleges that, after enrolling eight students in her first two weeks of employment, she was told she "would receive a raise based solely on her ability to continue enrolling students" at that rate. Id. ¶ 24. One month later, she was "given a letter . . . stating that she was being terminated solely for failing to meet her enrollment quota." Id. ¶ 25. Relators also allege that USEC Defendants closely monitored sales representatives' enrollment figures, and that those who failed "to 'convert' a minimum percentage of leads into enrollments were also

5

1  terminated."  Id. ¶ 39.

2      The FAC alleged no details with respect to its claims against

3  the individual Defendants or Almich.  The Court therefore found

4  that Relators failed to allege with the requisite particularity

5  their claims of fraud against those Defendants.  In the SAC,

6  Relators allege that individual Defendants Nathanson, Gedney and

7  Lindsey "directed, authorized, ratified, and/or acted with

8  knowledge or reckless indifference to the wrongful conduct

9  described" in the SAC.  Id. ¶¶ 5-7.  Relators also allege that the

10  recruiter compensation strategies described in the SAC were

11  "conceived, designed, and implemented by the officers and

12  shareholders Defendants Gedney, Lindsey, and Nathanson."  Id. ¶ 78.

13  Nathanson in particular is alleged to have "executed the Program

14  Participation Agreements with the U.S. Department of Education on

15  behalf of SVC and WCC."  Id. ¶ 5.  The SAC also states that Almich

16  conducted compliance examinations of SVC for fiscal years 1997,

17  1998, 1999 and 2000; audited SVC's financial statements for fiscal

18  years 1997, 1998, 1999, 2000, 2001 and 2002; and performed both the

19  compliance examinations and the financial audits for WCC for fiscal

20  years 1997, 1998, 1999, 2000, 2001 and 2002.  Id. ¶ 8.

21                          LEGAL STANDARD

22      "In all averments of fraud or mistake, the circumstances

23  constituting fraud or mistake shall be stated with particularity."

24  Fed. R. Civ. P. 9(b).  The allegations must be "specific enough to

25  give defendants notice of the particular misconduct which is

26  alleged to constitute the fraud charged so that they can defend

27  against the charge and not just deny that they have done anything

28                              6

United States District Court
For the Northern District of California

wrong." <u>Semegen v. Weidner</u>, 780 F.2d 727, 731 (9th Cir. 1985).

Statements of the time, place and nature of the alleged fraudulent

activities are sufficient, <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d

1433, 1439 (9th Cir. 1987), provided the plaintiff sets forth "what

is false or misleading about a statement, and why it is false." <u>In</u>

<u>re GlenFed, Inc., Sec. Litig.</u>, 42 F.3d 1541, 1548 (9th Cir. 1994).

Scienter may be averred generally, simply by saying that it

existed.  <u>See</u> <u>id.</u> at 1547; <u>see</u> Fed. R. Civ. P. 9(b) ("Malice,

intent, knowledge, and other condition of mind of a person may be

averred generally").  As to matters peculiarly within the opposing

party's knowledge, pleadings based on information and belief may

satisfy Rule 9(b) if they also state the facts on which the belief

is founded.  <u>Wool</u>, 818 F.2d at 1439.

DISCUSSION

I.   Failure to Plead Fraudulent Statements with Specificity

Defendants move for dismissal on grounds, among others, that

the SAC's allegations of conduct outside the protection of the ED's

safe harbor regulations are not stated with the specificity

required by Rule 9(b).

According to the SAC, Ms. Bott and Ms. Newman were fired

"solely" for failing to meet their minimum enrollment quotas, and

Mr. De Croos received one $10,000 raise "solely" based on the

number of students he recruited and a second $10,000 raise in the

same year based "solely on his continued success" at recruiting.

Other than the insertion of the word "solely," the allegations do

not differ substantially from the quota system described in the

FAC, which the Court found fell within the safe harbor provision.

United States District Court

For the Northern District of California

As the Court noted in its prior order, the ED's regulations were promulgated based on the assumption that the HEA does not prohibit institutions from basing "salaries or salary increases on merit," Dep't of Ed., Federal Student Aid Programs, 67 Fed. Reg. 67,048, 67,053 (Nov. 1, 2002), and neither the HEA nor the regulations otherwise addresses the hiring and firing of admissions representatives or quotas.  The firing of Ms. Bott and Ms. Newman for failing to meet a mandatory quota does not constitute a "commission, bonus, or other incentive payment" prohibited by the HEA, and Relators in their opposition do not argue otherwise.

For admissions representatives responsible for increasing enrollment of students, there is necessarily a fine distinction between a permissible salary increase "based on merit" and an impermissible salary increase "based solely on the number of students enrolled."  In order to state their fraud claim, Relators must allege with specificity a direct relationship between the raises given and the number of students enrolled.  Other than frequently using the word "solely," the SAC does not do so.  For instance, Relators do not provide any information demonstrating with specificity that there was a direct relationship between the number of students enrolled by Mr. De Croos and his two $10,000 raises.  To the contrary, the specific facts alleged are equally susceptible to Defendants' interpretation, that fulfillment of quotas merely rendered Mr. De Croos eligible for two raises and thus fell within the safe harbor regulations.  Without more detailed allegations showing the relationship between pay raises and the specific number of students actually enrolled by Mr. De

United States District Court

For the Northern District of California

8

United States District Court

For the Northern District of California

1  Croos or other admissions representatives, the Court finds that

2  Relators have not described with particularity a pay structure that

3  falls outside the safe harbor regulations.

4      As the Court explained in its previous order, such a pay

5  structure would be necessary in order to maintain Relators' FCA

6  action.  See July 13, 2005 Order at 9-11.  This reasoning applies

7  as well to to the FCA claim against Almich, because Relators' fraud

8  claim against it rests entirely on Almich's alleged ratification of

9  the Colleges' alleged incentive payments.  For these reasons, the

10 Court finds that the SAC fails to meet Rule 9(b)'s requirement that

11 the false or fraudulent statements by Defendants be alleged with

12 particularity.

13 II.  Failure to Plead Fraud with Respect to Specific Defendants

14      A.  Individual USEC Defendants

15 USEC Defendants move for dismissal of the complaint on the

16 grounds that the allegations against the three individual USEC

17 Defendants, Nathanson, Gedney and Lindsey, fail to meet the

18 requirements of Rule 9(b).  As USEC Defendants note, the

19 allegations against the individuals are for the most part so vague

20 and conclusory that they do not allow each to know how he, in

21 particular, is alleged to have participated in the Colleges'

22 conduct.  Relators do specify that Nathanson executed the PPAs.

23 However, they do not identify the time, place and date of the

24 alleged fraudulent or false statements for either Gedney or

25 Lindsey.  The only other allegations of wrong-doing against the

26 individual Defendants are collective accusations that attribute

27 every act of the Colleges to each individual.  Therefore, the Court

28

9

finds that the SAC fails to meet Rule 9(b)'s particularity

requirement with respect to the allegations against Defendants

Gedney or Lindsey.

B.   Almich

Almich also moves for dismissal pursuant to Rule 9(b) on

grounds, among others, that it did not provide services for the

Colleges during the times of specifically alleged fraud, if any.

In the SAC, Relators specify the years in which Almich

conducted compliance examinations or financial statement audits;

the last fiscal year for which Almich is alleged to have provided

its services to the Colleges is 2002.  The SAC makes clear that

Almich's liability is premised on the Colleges' alleged failure to

comply with federal law governing recruiter compensation.  SAC

¶ 44.  However, all of the SAC's specific, dated allegations of

conduct in violation of the HEA refer to 2003 or later.  Therefore,

even if those allegations had met the requirements of Rule 9(b)

with respect to the USEC Defendants, they would be insufficient to

state with particularity circumstances for which Almich could be

held liable for false or fraudulent statements.

CONCLUSION

For the foregoing reasons, USEC Defendants and Almich's

motions to dismiss Relators' complaint (Docket Nos. 87 and 8,

respectively) are GRANTED.  Because counsel stated at oral argument

that Relators did not seek leave to amend to remedy the

deficiencies identified by the Court, the dismissal is with

prejudice.

USEC Defendants' request for judicial notice (Docket No. 26)

**United States District Court**

For the Northern District of California

is DENIED as moot.  Judgment shall be entered in Defendants' favor; each side shall bear its own costs.  The Clerk shall close the case file.

        IT IS SO ORDERED.


Dated: 10/5/05

_____
CLAUDIA WILKEN
United States District Judge