IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, Ex Rel. MOUNTHASONE BOTT and SUSAN NEWMAN,<br><br>    Plaintiffs,<br><br>  v.<br><br>SILICON VALLEY COLLEGES, et al.,<br><br>    Defendants.<br>_____/ | No. C 04-320 CW<br><br>ORDER DENYING RELATORS' MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION |

Relators Mounthasone Bott and Susan Newman move for leave to file a motion for reconsideration of the Court's October 5, 2005 order dismissing with prejudice their second amended complaint (SAC). Defendants U.S. Education Corporation (USEC), Silicon Valley Colleges and Western Career Colleges (the Colleges), and Greg Nathanson, Ellis C. Gedney and Darryl Lindsey (collectively, USEC Defendants) and Defendant Almich & Associates (Almich) separately oppose the motion. Having considered all of the papers filed by the parties, the Court denies Relators' motion.

BACKGROUND

Relators brought this <u>qui tam</u> action under the False Claims Act (FCA), 31 U.S.C. § 3729 <u>et seq</u>, against all Defendants on behalf of the United States to recover all federal educational grants, including Pell Grants, and all payments on federally insured educational loans used to fund students at the Colleges.

Relators alleged that Defendants knowingly and falsely stated that they were eligible to participate in grant and loan programs as authorized by Title IV of the Higher Education Act (HEA), 20 U.S.C. § 1070 et seq. 20 U.S.C. § 1094(a). The Colleges' eligibility is conditioned upon compliance with certain requirements, among others,

> The institution will not provide any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments or financial aid to any persons or entities engaged in any student recruiting or admission activities or in making decisions regarding the award of student financial assistance . . . .

Id. § 1094(a)(20). The Department of Education (ED) has promulgated "safe harbor" regulations, which clarify that institutions may provide their admissions representatives with

> fixed compensation, such as a fixed annual salary or a fixed hourly wage, as long as that compensation is not adjusted up or down more than twice during any twelve month period, and any adjustment is not based solely on the number of students recruited, admitted, enrolled, or awarded financial aid. For this purpose, an increase in fixed compensation resulting from a cost of living increase that is paid to all or substantially all full-time employees is not considered an adjustment.

34 C.F.R. § 668.14(b)(22)(ii)(A).

In their first amended complaint (FAC), Relators alleged that Defendants violated the federal law prohibiting incentive payments to admissions representatives by paying recruiters a "so-called 'salary' . . . that was directly tied to an enrollment quota for that recruiter." FAC ¶ 47. Pursuant to this alleged arrangement, recruiters who failed to enroll their minimum quota were terminated, while those who exceeded the minimum quota were retained and given raises.

In its July 13, 2005 order, the Court dismissed the FAC

2

pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and for failure to comply with Federal Rule of Civil Procedure 9(b)'s requirement that the FCA allegations of fraud be plead with particularity. The Court found that the FAC failed to state an FCA claim because the USEC Defendants' alleged system of recruitment quotas, in which employees who fail to meet the minimum enrollment quotas are fired and those who exceed the minimum are retained and given raises, fell within the safe harbor provisions of the ED's regulations. The Court reasoned that, although pay adjustments could not be based "solely" on the number of students recruited, the safe harbor provision reflected the ED's understanding that institutions could base salaries or salary increases on merit. The Court found that, in fact,

> Relators have not alleged any conduct that falls outside the safe harbor regulations. For example, they have not alleged that the Colleges provide more than two salary adjustments in a year not related to cost-of-living, or adjustments based "solely on the number of students" recruited.

July 13 Order at 10. Because the practices alleged were protected by the regulations, the Court concluded that Defendants could not be held liable for fraud under the FCA, even if the ED regulations were inconsistent with the HEA.

In their SAC, Relators alleged generally and repeatedly that the Colleges paid their recruiters based "solely" on their success at enrolling students. They specifically alleged that Ms. Bott was given a minimum enrollment quota of approximately twelve students per month, and that she was fired after three months "solely because she failed to meet her enrollment quota." Id. ¶ 18. Relators alleged that sales representative Indy De Croos received

3

1  two $10,000 raises based "solely" on his continued success at
2  securing enrollments.  They alleged that Ms. Newman was "terminated
3  solely for failing to meet her enrollment quota."  Id. ¶ 25.  In
4  opposing Defendants' motions to dismiss the SAC, Relators insisted
5  that these allegations of a compensation system related to
6  mandatory minimum enrollment quotas and raises for those who
7  exceeded quotas were sufficient to plead actionable fraud.  At the
8  September 16, 2005 hearing on Defendants' motions to dismiss the
9  SAC, counsel for Relators stated that if the Court decided that
10 Relators still had failed to plead fraud under the FCA in their
11 SAC, Relators would prefer that the Court dismiss the case with
12 prejudice to enable Relators to pursue an appeal.
13      In its October 5, 2005 order, the Court did find that the
14 SAC's allegations did not demonstrate conduct by Defendants falling
15 outside the protection of the ED's safe harbor regulations, and
16 thus that Relators' claims were not stated with specificity as
17 required by Rule 9(b).  It found that other than insertion of the
18 word "solely," the SAC's allegations did not differ substantially
19 from the quota system described in the FAC, which the Court had
20 found fell within the safe harbor provision.  It found that in
21 order to state their fraud claim, Relators would have to "allege
22 with specificity a direct relationship between the raises given and
23 the number of students enrolled," and that merely using the word
24 "solely" was not specific enough.  It also found that the
25 allegations against the individual USEC Defendants, Nathanson,
26 Gedney and Lindsey were so vague and conclusory that they did not
27 allow each individual to know how he was alleged to have
28
                                   4

participated in the Colleges' conduct, and that the allegations against Almich were likewise insufficient to state with particularity circumstances for which Almich could be held liable for false or fraudulent statements, even if the complaint had met Rule 9(b) requirements with respect to the USEC Defendants. The Court entered judgment in Defendants' favor on October 5, 2005.

## LEGAL STANDARD

Relators move for leave for reconsideration pursuant to Federal Rule of Civil Procedure 59(e), which provides that a motion to alter or amend a judgment may be made within ten days of entry of judgment. However, the motion was filed on October 24, 2005, more than ten days after the October 5 entry of judgment. Therefore, the motion is treated as one for relief from final judgment under Rule 60(b). See Am. Ironworks & Erectors, Inc., v. North Am. Const. Corp., 248 F.3d 892, 898-99 (9th Cir. 2001) (noting that a motion for reconsideration "is treated as a motion to alter or amend judgment under Federal Rule of Civil Procedure Rule 59(e) if it is filed within ten days of entry of judgment. Otherwise, it is treated as a Rule 60(b) motion for relief from a judgment or order.") (internal citation omitted).

Rule 60(b) is not merely a device to get another try; it is not an equitable response to the request for "just one more time, please." Rule 60(b) enumerates the grounds upon which a motion for relief from an order or judgment may be made. It specifies the following:

1) mistake, inadvertence, surprise or excusable neglect;
2) newly discovered evidence which by due diligence could

5

|   |   |   |
|---|---|---|
| 1 |    | not have been discovered before the court's decision; |
| 2 | 3) | fraud by the adverse party; |
| 3 | 4) | the judgment is void; |
| 4 | 5) | the judgment has been satisfied; or |
| 5 | 6) | any other reason justifying relief. |

For the purposes of subparagraph (1), "gross carelessness" is insufficient to warrant reconsideration; nor is it sufficient that the party is "unhappy with the judgment." See 11 C. Wright & A. Miller, Federal Practice and Procedure, § 2858 at 170 (1973). "Mistake" in subparagraph (1) includes legal error by the Court. Yniques v. Cabral, 985 F.2d 1031, 1034 (9th Cir. 1993)("[A] district court's erroneous reading of the law is a 'mistake' sufficient to require reconsideration of an order."). The terms contained in subparagraph (1), including "excusable" are interpreted strictly. A motion made under subparagraph (6) requires a showing that the grounds justifying relief are extraordinary. Again, the mere dissatisfaction with the court's order, or belief that the court is wrong in its decision, are not grounds for relief under subparagraph (6) or, for that matter, under any other subparagraph of Rule 60(b).

"`[T]he major grounds that justify reconsideration involve an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Pyramid Lake Paiute Tribe of Indians v. Hodel, 882 F.2d 364, 369 n.5 (9th Cir. 1989) (quoting United States v. Desert Gold Mining Co., 433 F.2d 713, 715 (9th Cir. 1970)).

6

DISCUSSION

Relators move for leave to file a motion for reconsideration of the Court's October 5 order on the grounds that the Court erred in applying the Rule 9(b) standard too strictly, because the additional specificity required involves information peculiarly within Defendants' control.[1] See United States ex rel. Thompson v. Columbia/HCA Healthcare Corp., 20 F. Supp. 2d 1017, 1049 (S.D. Tex. 1998) (allowing relators to proceed to discovery without naming individual false claims, dates and details where relators had alleged with specificity "basic framework, procedures, the nature of the fraudulent scheme, and the financial arrangements and inducements"); United States ex rel. Johnson v. Shell Oil Co., 183 F.R.D. 204 (E.D. Tex. 1998) (holding that relators need not plead specific details of individual false claims, such as specific dates and invoice numbers, in order to meet requirements of Rule 9(b)).

Relators fail to show that this new legal argument, which was not raised in their opposition to Defendants' motions to dismiss the SAC, justifies reconsideration of the judgment against them. Relators claim that discovery is needed before they can plead "the amounts of the raises paid and the exact number of enrollments

---

[1] In a "notice of supplemental authorities," Relators also bring to the Court's attention the recent decision in United States of America ex rel. Main v. Oakland City University, 426 F.3d 914 (7th Cir. 2005), in which the Seventh Circuit held that a for-profit educational institution could be held liable under the FCA for payment of contingent fees to recruiters (the court described the compensation scheme at issue as one in which admissions representatives were allegedly "paid by the head"). Had the Court reached the question of FCA liability for violations of the HEA, Main would have been relevant persuasive authority, but it did not do so.

7

generated beyond each recruiter's enrollment quota," as such information is within Defendants' control. Relators' purported need for discovery misinterprets the Court's October 5 ruling. The Court did not find that Relators failed to plead exact amounts of raises and enrollments. Rather, the Court found that Relators failed to plead with specificity a "direct relationship" between raises and enrollments, such as granting recruiters a raise each time they recruited a certain (if unspecified) number of students. Instead, the allegations in the SAC were consistent with a mandatory minimum quota scheme which the Court had previously determined fell within the safe harbor regulation. If Relators do not possess information that would allow them to allege with specificity conduct by Defendants that falls outside the ED's safe harbor provisions, then Relators lack the necessary factual basis on which to file an FCA complaint.

## CONCLUSION

For the foregoing reasons, Relators' motion for leave to file a motion for reconsideration is DENIED (Docket No. 101).

IT IS SO ORDERED.

Dated: 1/4/06

_____
CLAUDIA WILKEN
United States District Judge